IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2022

## RICKEY R. JORDAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. 19-05740      J. Robert Carter, Judge**

### No. W2021-00441-CCA-R3-PC

The petitioner, Rickey R. Jordan, appeals the denial of his petition for post-conviction relief, which petition challenged his 2020 Shelby County Criminal Court guilty-pleaded convictions of aggravated robbery and aggravated assault, arguing that he was deprived of the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

C. Alex Jones, Memphis, Tennessee, for the appellant, Rickey R. Jordan.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Neil Umsted, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with especially aggravated robbery and aggravated assault, the petitioner pleaded guilty to a reduced charge of aggravated robbery and aggravated assault on January 15, 2020, in exchange for a total effective sentence of 10 years' incarceration with an 85 percent release eligibility percentage. The petitioner filed a petition for post-conviction relief on August 20, 2020, claiming that he was denied the effective assistance of counsel. He asserted that counsel failed to adequately prepare for the case, failed to conduct an adequate investigation, and failed to advise him of the consequences of pleading guilty, all of which led to the petitioner's pleading guilty. The State offered the following factual basis at the petitioner's guilty plea submission hearing:

If these matters had proceeded to trial, the proof would have shown that on Monday, July 29th of 2019, shortly before 3 a.m., victims China Elder and Rebecca Roman were at 1651 Get Well Road [at] the Q-Mart to purchase some snacks. The [petitioner] began a verbal altercation with Ms. Elder and another customer [i]n the parking lot.

[The petitioner] became irate and began striking Ms. Elder in the face with his fist numerous times. During his assault on Ms. Elder, she dropped money. And as she attempted to pick it up, [the petitioner] punched her again and pulled a knife on her and said no, that's my money now and took the $10 from her possession.

Victim Roman came over to assist Ms. Elder in getting away from [the petitioner] as he was wielding a knife. And then [the petitioner] punched Ms. Roman in the face several times, knocking her to the ground. She suffered broken ribs and required stitches as a result of the attack on her.

At the evidentiary hearing, the petitioner testified that trial counsel, whom the petitioner's mother had retained to represent the petitioner, failed to adequately communicate with him about the case. He said that trial counsel negotiated a plea agreement that required him to serve 10 years at 85 percent release eligibility and counseled him to accept the deal "or chance getting [15] years." The petitioner said that counsel's advising him to accept the agreement led him to feel that trial counsel was not "working for me." He insisted that counsel did not have a "defense plan for me," did not file any pretrial motions, and did not go over the discovery materials with him. The petitioner acknowledged that counsel showed him "a piece" of the surveillance video that captured the offenses but said that counsel did not explain "[w]hat it meant to me." Instead, trial counsel told him "take this [10], or chance getting [15]."

The petitioner testified that he was aware of the terms of the plea agreement but that he "was under the impression that maybe I could possibly obtain a time cut, or something." He said that he learned the full implications of the agreement when speaking to "what they call, 'Jailhouse Lawyers.'" When asked what remedy he sought, the petitioner said that he "would like to be able to go home, my kids need me and my oldest is about to graduate." The post-conviction court cautioned the petitioner that no such remedy was available and that, instead, a successful post-conviction petition would mean the reinstatement of the original Class A felony charge of especially aggravated robbery and a trial on both charged offenses.

-2-

During cross-examination, the petitioner conceded that trial counsel successfully negotiated a plea agreement that included a reduced charge, a reduced sentence, and concurrent alignment of the sentences. He acknowledged that he was aware that the agreement required him to serve 85 percent of a 10-year sentence.

During redirect examination, the petitioner said that, in terms of potential defenses, "I take my medication for several different variety of reasons. And I told them that, but [counsel] didn't too much have any sense of urgency to even look into anything that I was trying to tell him." He said that he wanted to speak with counsel "[a]bout my mental state and about what I've been going through now." He insisted that had trial counsel properly communicated with him, he would not have pleaded guilty.

Trial counsel testified that his office was retained to represent the petitioner. He said that he received surveillance video from three different cameras that captured the offenses, which "occurred at a gas station" and involved the defendant holding one of the victims at knife point. He recalled that "there were six stitches, a busted lip and protracted vertigo between the two victims, her and a pregnant woman." He said that his strategy at trial would have been to challenge the State's ability to prove that either victim suffered serious bodily injury. He said that he used this argument to successfully negotiate the plea agreement in this case. Counsel said that it was his practice to advise his clients of the potential sentences and release eligibility percentages attached to the charged offenses as well as those attached to the plea offenses. He said that he was satisfied that the petitioner fully understood the terms of the plea agreement. Counsel recalled that he had an unremarkable working relationship with the petitioner, describing it as "just middle of the road, just normal." He testified that he was comfortable with the amount of time that he spent with the petitioner communicating about the facts of the case, the nature of the proceedings, and the terms of the plea agreement.

During cross-examination, trial counsel said that he reviewed "[t]he entirety of the State's discovery packet, in addition to the three video tapes" with the petitioner. He said that he discussed with the petitioner his belief that the injuries inflicted on the victims did not rise to the level of serious bodily injury. He acknowledged that he did not discuss self-defense with the petitioner but said that "the issue of self-defense must be fairly raised from the evidence and it did not."

At the conclusion of the hearing, the post-conviction court took the matter under advisement. The post-conviction court later denied post-conviction relief in a written order. In the order, the post-conviction court found that the petitioner's "assertions that he was not adequately represented are not supported by facts." The court noted that the petitioner had "offered no evidence of anything his attorney could have done which may

-3-

have affected the outcome in the case." The post-conviction court concluded that the petitioner's "entry of a knowing and voluntary guilty plea to a lesser included offense is demonstrated by the record."

In this timely appeal, the petitioner asserts that the post-conviction court erred by denying relief.[1] The State contends that the court did not err.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have

_____

[1] The petitioner actually asserts that the post-conviction court "abused its discretion by denying petitioner's request for post-conviction relief." Abuse of discretion is not the appropriate standard of review.

-4-

pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (alteration in original) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Wilson*, 31 S.W.3d at 195 (alterations in original) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

The record supports the denial of post-conviction relief. Aside from a bare assertion that trial counsel's communication left something to be desired, the petitioner did not actually offer any concrete instances of deficient performance. Indeed, the record establishes that trial counsel thoroughly reviewed the discovery materials with the petitioner, including the surveillance video that captured the offenses, and fully apprised the petitioner of the nature of the charges against him. Additionally, counsel successfully utilized the facts of the case to negotiate a plea agreement that allowed the petitioner to plead guilty to the lesser charge of aggravated robbery in exchange for a total effective sentence of 10 years with an 85 percent release eligibility. Had he been convicted of especially aggravated robbery at trial, he faced a minimum sentence of 15 years with a release eligibility percentage of 100 percent. The petitioner did not suggest any piece of evidence counsel should have uncovered, any witness he should have interviewed, any motion he should have filed, or any omission in the information trial counsel conveyed to the petitioner.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-5-